Louise Hickox Pickering, Executrix of Last Will and Testament of Louise B. Hickox, Appellant, v. Harris V. Hickox et al., Appellees.

Harris V. Hickox et al., Appellees, v. Louise Hickox Pickering, Individually and as Executrix of Last Will and Testament of Louise B. Hickox, Deceased, Appellant.

Gen. No. 9,217.

Heard in this court at the October term, 1939. Opinion filed January 15, 1940. Opinion modified and rehearing denied February 29, 1940.

EDWARD PREE, of Springfield, for appellant.

A. M. FITZGERALD, CARL A. SORLING and CATRON & HOFFMANN, all of Springfield, for appellees.

Mr. Presiding Justice Riess delivered the opinion of the court.

Louise Hickox Pickering, as executrix of the will of Louise B. Hickox, her deceased mother, filed a complaint at law in the circuit court of Sangamon county, Illinois, seeking recovery for the benefit of said estate of certain moneys alleged to be due from Harris V. Hickox, Norman B. Hickox and Catherine Hickox Moore, her brothers and sister, and the Springfield Marine Bank, as trustee, under the terms of certain written instruments and agreements theretofore entered into between said parties, to which complaint answers and a counterclaim praying equitable relief were interposed by said defendants and issues joined thereon. The cause was referred to and heard by the master in chancery, to whose report objections and exceptions were duly filed and overruled, and the master's report, findings and conclusions were approved. A decree was thereupon entered against plaintiff in the original complaint and granting the equitable relief sought in defendants' counterclaim, from which decree the plaintiff has appealed to this court.

Harris V. Hickox, Sr., had departed this life intestate in 1931, leaving him surviving Louise B. Hickox, the above decedent, as his surviving widow, and the above-named plaintiff and defendants as his only children and heirs at law. The estate consisted principally of the homestead residence at 529 South Fourth street in Springfield, Illinois, together with other valuable real estate located principally in said city and of personal estate of an estimated value of $18,000.

Subsequent to his death, his said widow and children entered into a written agreement dated January 10, 1931, appointing Harris V. Hickox, one of the sons, as their agent and therein authorized him to rent, manage and control all of said real estate and provided that none of the same should be sold unless such sale was

agreed to by a majority in interest of said parties. It was also provided therein that the widow, Louise B. Hickox, might occupy and use the above-mentioned residence property without payment of rent as long as she so desired and was to keep the same in repair and pay taxes thereon. One third of the net income from the real estate was therein made payable to her and the residue in equal parts to and among the four children. The contract was to remain in full force and effect until the death of Louise B. Hickox or five years from the date of such agreement, and to become automatically renewed annually until one or more of said parties had given written notice to the others of objection to such renewal at least 90 days before the anniversary of the death of Louise B. Hickox or upon the expiration of said five-year period.

On February 4, 1933, a subsequent written contract was entered into by said parties wherein it was provided that in addition to her one-third interest in said estate, the widow was to have a right of homestead in the above residence property, but might reside elsewhere if she so desired and would not thereby lose or waive her right of homestead.

Subsequently, during March, 1934, by agreement of said parties, certain real estate was conveyed to the Lee and Harris Hickox Building Corporation and certificates for 780 shares of capital stock of no par value was issued as follows: 130 shares to Louise B. Hickox; 65 shares to each of her said four children, the remaining half of 390 shares being issued to one Lee Hickox, who held an undivided one-half interest in fee simple in said real estate. The certificates of stock issued to said Louise B. Hickox and children bore an endorsement setting forth that they were held subject to the terms of paragraph five of their above contract which had been entered into on January 10, 1931, and which stock certificates were issued in lieu of the interests of the said parties in said real estate.

Paragraph five of said contract provided in substance that none of the parties thereto should sell his or her interest in said real estate or any part thereof during the term of the agreement or any renewal thereof unless offered to the other parties at the agreed sale price thereof, under which contract Harris V. Hickox continued to act as agent in connection with the remaining real estate not so transferred to said corporation.

During the latter part of 1933 and the early part of 1934, further negotiations took place between Louise B. Hickox and the children with reference to an amicable division of the remaining real estate and shares in the building corporation. The real estate was duly appraised and a value placed upon the stock certificates, and Harris V. Hickox was thereupon authorized to have the necessary deeds and documents prepared in compliance with such tentative agreements of the parties, and the same were prepared and executed by all of the parties and delivered with a letter of instructions dated August 7, 1934, signed by all the heirs, to the Springfield Marine Bank, as trustee, whereunder all such papers, documents and evidences of title or division of said property were delivered to the bank and divided among and delivered to said parties according to their respective rights and interests as so agreed upon. After the same was transferred to her, Louise B. Hickox conveyed certain real estate to Norman B. Hickox and Harris V. Hickox, reserving a vendor's lien to insure payment of $200 per month to her so payable on the first day of each month during her lifetime and for the payment of said sum per month after her death to her executor or administrator for a period of not more than 18 months in so far as such payments might be necessary to satisfy claims against her estate and to pay a legacy of $1,000 to her sister and the costs of administration. In the trust agreement it was further stipulated that out of the income

from the trust property, the trustee, Springfield Marine Bank, should pay the sum of $2,400 a year to Louise B. Hickox during her lifetime and that the trustee should make such payments to her executor or administrator for a period of not more than 18 months after her death in so far as such payments might be necessary to satisfy claims against her estate together with a legacy of $1,000 to her sister and the costs of administration.

In the letter of instructions to the bank, it was also provided that the homestead property involved in this suit should be conveyed to Louise B. Hickox by her children, and the deed thereto was delivered to the bank with the letter of instructions.

Claims totaling $5,697.30 were filed in Louise B. Hickox's estate, which estate consisted of money in the bank amounting to $535.36 and miscellaneous household articles and personal property.

The original complaint sought judgment against each of the defendants in the sum of $1,800 alleged to have been necessary to meet the claims filed against said estate, predicating said alleged cause of action on the contract providing for contributions for the support of the mother as hereinabove set forth and for a period of 18 months beyond the time of her death.

The counterclaim sought equitable relief by alleging that in violation of the provisions of the written agreement entered into on January 10, 1931, and the subsequent negotiations, agreements and understandings between said parties, the appellant unlawfully, wrongfully and secretly on or about May 24, 1934, obtained from Louise B. Hickox an agreement to convey the homestead property to her, together with a warranty deed thereto, and that she agreed that on the completion of such transfer she would return to said Louise B. Hickox the shares in said building corporation issued to the latter when so required in order to complete a division of the property among said heirs, which

shares she claimed had been previously transferred by indorsement to her by Louise B. Hickox, although no such indorsement appeared thereon, contrary to the expressed restrictions indorsed on the certificates for such shares as set forth in paragraph five of the written agreement dated January 10, 1931. The above deed was not recorded, but was secretly held by the appellant and never made known to the appellees until after the death and probate of will of Louise B. Hickox, when it was recorded on October 9, 1934.

The counterclaim further alleged that contrary to the restrictions contained in said agreement and further conditions, negotiations and agreements made for the division of said real estate and shares of stock by all the children, the appellant on or about August 27, 1934, obtained a second warranty deed of said homestead property to herself without any valid consideration therefor, which deed was also secretly held by her and never made known to the appellees until after the death of Louise B. Hickox, and until after the probate of her said last will and testament.

Further allegations of facts and circumstances connected with said alleged fraud were set forth in the counterclaim and much of the voluminous evidence appearing in the abstract and record and the approved findings of the master cannot be recited herein, but the same have been carefully examined and considered by the court.

It appears from the evidence and from the approved report of the master herein that the transactions between Louise B. Hickox and the appellant with respect to the alleged agreement and warranty deed dated May 24, 1934, undertaking to convey the homestead premises were made secretly and without the knowledge of the three remaining children and cotenants therein and in violation of the terms of the written contract of said parties dated January 10, 1931, then remaining in full force and effect; that the subsequent

warranty deed from said Louise B. Hickox to the appellant dated August 27, 1934, conveying said premises to the appellant was likewise so secretly made without the knowledge, consent or approval of the appellees in violation of the terms of said contract, which said secret conveyances and arrangements were wholly unknown to the remaining children until said deeds were recorded in October, 1934, and prior to both the date of the execution and delivery of the escrow arrangement and of the deed from the children to the mother, which latter deed and contract were delivered to the parties on September 6, 1934, and immediately prior to the death of the mother on September 8th.

It further so appears that during the negotiations for the division of said property between the said parties as cotenants, owing toward each other the exercise of good faith in their respective transactions as tenants in common, and as a part of the consideration therefor, the defendants so altered the terms of such tentative arrangements as to provide for the transfer of said homestead to the mother for the stated reason that the same might become necessary for her use and support during her lifetime and in the payment of claims against her estate, which statement and purpose, together with the statement that the same was not to be disposed of during her lifetime, was made by Harris V. Hickox in the presence of all of said parties and tacitly agreed upon, and was a part of the moving consideration which resulted in the agreement of the other children that they would contribute the monthly payments after her death.

To permit the appellant by such concealment to procure an undue advantage over the other children by procuring title to this property and leading them to enter into an agreement on the part of the four children to make such contributions after the mother's death toward the claims of her estate, knowing that

such property was passing indirectly to her and not to her mother or mother's benefit nor as a part of her prospective estate would be unjust and inequitable and would permit her to take advantage of her own wrongs.

The equitable relief sought by the counter claimants was against the fraud and deceit exercised by the complainant herein, whereby she now seeks to retain the property free from the payment of all obligations and force them to contribute to the payment of an indebtedness under the terms of the agreement so procured by her by such fraudulent concealment, which claims against the estate consisted principally of the $1,000 gift to the sister, provided for in the contract, together with attorney fees for services performed.

While such an agreement between the children as tenants in common, when fairly and understandingly entered into, would be binding, the remaining children had a right to know and it was the duty of the appellant to speak out when the agreement to meet the mother's obligations was made and when she knew that she already held the contract for the deed from the mother and her warranty deed to the property, which would force them by such deception and concealment to meet the very obligation which she now seeks to enforce to her own advantage.

We do not question the legal right of the mother to make the transfer of property to which the fee simple title became vested in her, but the contract for the payment of the sums as between the four children was tainted with fraud and therefore that portion of the contract by which she seeks to recover this money from the other children was properly held by the trial court to be fraudulent as between the appellant and counter claimants herein.

We hold that the finding of facts and conclusions of the master, as approved by the court and embodied in its decree, were in accordance with the evidence; that

the defendants amply sustained the material allegations of their counterclaim and were entitled to the equitable relief therein granted against the appellant.

It is further insisted by the appellant that much of the evidence offered to sustain the counterclaim herein was given by incompetent witnesses in contravention of the provisions of sec. 2, ch. 51, Ill. Rev. Stat. 1939, [Jones Ill. Stats. Ann. 107.068] rendering interested persons incompetent to testify in a civil action when the adverse party sues or defends as executor, administrator, heir, legatee or devisee of any other person. We are of the opinion that the defendants were competent witnesses in support of the allegations made in their counterclaim as against appellant Louise Hickox Pickering as an individual, who was so made a party defendant to their counterclaim and was a party to all of the transactions in controversy. *Simpson v. Wrate,* 337 Ill. 520, 169 N. E. 324.

In the latter case, the heirs of the deceased grantor sought to set aside her deed to another heir or to have a trust imposed thereon because of a verbal agreement of all the parties to be reimbursed out of the property conveyed for services rendered the grantor, wherein it was held that they were competent witnesses as to the terms of said agreement with the grantor, as the defendant in such case was not being sued as an heir but as a grantee of the grantor. To the same effect is *Seaton v. Lee,* 221 Ill. 282, 77 N. E. 446, and cases therein cited.

It is said in the opinion of the trial court appearing in the record herein that their testimony was considered as competent in support of the counterclaim and was so limited, and that since the witnesses were competent for certain purposes, the general objection to their competency was overruled. The effect of the decree would be to augment and not to lessen the assets

of the estate chargeable with the claims against the same.

After careful consideration of the evidence and circumstances surrounding the transactions of the parties at issue herein, we are of the opinion that the chancellor properly entered a decree in accordance with the findings and conclusions of the master and in granting the relief prayed for under the counterclaim and the same will therefore be affirmed.

*Decree affirmed.*